57 CCPA

The **AMERICAN NOVAWOOD COR-
PORATION**, Appellant,

v.

**U. S. PLYWOOD–CHAMPION PAPERS,
INC.**, Assignee, By Merger and Change
of Name of United States Plywood Cor-
poration, Appellee.

Patent Appeal No. 8274.

United States Court of Customs
and Patent Appeals.

May 21, 1970.

A. Donald Messenheimer, Washington,
D. C., attorney of record, for appellant.
(Burns, Doane, Benedict, Swecker &
Mathis, and William L. Mathis, Wash-
ington, D. C., of counsel).

James M. Heilman and Heilman &
Heilman, Washington, D. C., for appel-
lee.

Before RICH, Acting Chief Judge,
ALMOND, BALDWIN and LANE,
Judges, and ROSENSTEIN, Judge,
United States Customs Court, sitting by
designation.

RICH, Acting Chief Judge.

This appeal is from the decision of the
Patent Office Trademark Trial and Ap-
peal Board, 154 USPQ 505 (1967), dis-

missing an opposition to the registration of NOVOWOOD as a trademark for "Lumber and Wood Products, i. e., Particle Board With or Without Decorative Faces," serial No. 211,215, filed February 2, 1965. Applicant, U. S. Plywood-Champion Papers Inc.,[1] claims use of the mark since January 9, 1965, and also that this mark is the newest member of a family of "NOVO" marks previously registered by it in the Patent Office.

Appellant-opposer concedes in its brief that appellee has the following registrations:

| Trademark | Reg. No. | Date Reg'd. |
|---|---|---|
| NOVOPLY | 542,445 | May 15, 1951 |
| Board formed of wood particles, etc. | | |
| NOVIDOR | 572,330 | March 24, 1953 |
| Flush doors | | |
| NOVOCORE | 595,787 | Sept. 28, 1954 |
| Boards and doors formed of wood particles adhesively secured together both with and without facings of other decorative materials | | |
| NOVOTILE | 609,406 | July 26, 1955 |
| Board formed of wood particles adhesively secured together | | |
| NOVODOR | 670,823 | Dec. 9, 1958 |
| Doors | | |
| NOVOWALL | 672,043 | Jan. 6, 1959 |
| Wall panels used principally for partitions | | |
| NOVOTEX | 677,212 | April 21, 1959 |
| Wood and lumber products, i. e., particle board or fiber board. | | |

Admittedly *subsequent* to all of the foregoing registrations, opposer, The American Novawood Corporation, was incorporated on August 28, 1964, and began the use of the *name* "novawood" under the following circumstances.

The Atomic Energy Commission, Process Radiation Section of the Division of Isotopes Development, in a search for peacetime uses of atomic energy, developed a new wood product which was produced by impregnating ordinary wood with a synthetic resin monomer and then irradiating it with gamma ray energy to polymerize and solidify the resin. This irradiated wood-plastic combination, or "alloy" as it was called, was named "novawood" by the A.E.C. which then, in July of 1964, asked the Commissioner of Patents to place that name on file in the Trademark Division for search purposes, "to be cited against applications for registration of trademarks," as the request stated.[2] It was so placed on file. The A.E.C. then released publicity on novawood and solicited proposals for the design of a large-scale pilot plant to make it. Lawrence G. Barrett, president of opposer, being familiar with the project, decided to form a corporation to commer-

---

1. Formerly, and at the time of application, United States Plywood Corporation.

2. It is understood that this is a Patent Office practice of long standing. See the opinion of First Asst. Comr. Reynolds in In re United States Plywood Corp., 144 USPQ 440 (1965), stating that the practice goes back to 1916.

cialize novawood and organized American Novawood Corporation. Members of the A.E.C. are said to have expressed pleasure at his willingness to accept and use the term novawood. In the latter part of 1964, opposer proceeded with its plans and distributed brochures and samples of the product to the wood-fabricating industry. The samples were stamped with the name novawood and a mark adopted by opposer which consisted of a rectangular, wood-grained panel occupied by the name in capital letters and with zig-zag lines having arrow heads pointing at the opposite ends of the panel, indicative of irradiation.[3]

United States Plywood, upon learning of the situation, called the attention of the A.E.C. to its family of "NOVO" marks and on January 12, 1965, the A.E.C. requested that the name novawood be withdrawn from the files of the Trademark Division, putting out a press release on the same day in which it said:

> These [wood-plastic] combinations heretofore have been called "novawood." As explained later, use of that term has been discontinued.
>
> \* \* \* \* \* \*
>
> Use of the term "novawood," previously employed by the Commission to describe these radiation processed wood-plastic combinations, is being discontinued to avoid any possible confusion with proprietary terms used in industry and to assure that this new product enters the market place free from discord that might inhibit its use.

As above noted, United States Plywood had begun using its NOVOWOOD mark three days earlier on January 9, 1965, applied for registration within a month, and this opposition ensued.

While this was going on, United States Plywood was also petitioning the Commissioner of Patents, questioning the practice of placing generic names in its trademark search files and objecting to the presence there of the name novawood. This petition was denied but on a request for reconsideration after the A.E.C. had requested that the name be withdrawn, on February 3, 1965, the First Assistant Commissioner noted in a supplemental opinion that the request to withdraw had been granted, which disposed of the matter. *United States Plywood,* supra, note 2.

The board found, and the record appears to support the finding, that after the A.E.C.'s dropping of the name novawood,

> \* \* \* the designation W P C (meaning wood-plastic combination) has been used in lieu of "novawood" by writers in articles as the name for the wood product developed under the sponsorship of the Atomic Energy Commission. One company, other than opposer, indicated that it had adopted "Lockwood" as a name for this product. It does not appear that any company but applicant [opposer?] refers to this product by the term "novawood".
>
> \* \* \* \* \* \*
>
> \* \* \* Apparently the trade, excepting opposer, has recognized applicant's rights by dropping "novawood" as a name and substituting "WPC" or some different designation therefor. In fact we note that opposer is not wholly consistent since it too has used in correspondence "WPC" as a generic name. We recognize that a product may have more than one name but opposer apparently is the only one using "novawood" as a name.

On the basis of the foregoing factual situation, the board dismissed the opposition on the ground that opposer could not

---

3. Opposer has an application to register this mark on file, serial No. 209,652, filed Jan. 11, 1965, claiming first use Oct. 8, 1964. This application is in no way involved in this opposition. In an amendment therein dated Sept. 16, 1965, the attorneys stated that "novawood" is a "truly descriptive term" and disclaimed it "apart from its use in combination with the design." In an action dated Oct. 15, 1965, further action in the application was suspended pending the outcome of this opposition.

be legally damaged by the registration of NOVOWOOD to applicant. The sole issue is whether it erred in so doing.

■ We do not find that the opposer raises any substantial issue as to any of the foregoing facts. As we view the matter, the basic question is whether applicant, United States Plywood, has a right to register NOVOWOOD which is superior to opposer's asserted right to prevent registration, which opposer predicates on prior use of novawood as a generic name and as a trade name, relying on section 2(d) of the statute (15 U.S.C. § 1052(d)). On the first point, while it is clear that opposer (and others) used novawood as a name prior to applicant's use of NOVOWOOD, and attempted to make a generic name of it, that attempt failed, and was bound to fail, in view of applicant's admittedly prior rights in the mark NOVOPLY for the same goods, together with a half-dozen other "NOVO" marks for other wood products. As the board pointed out, applicant was selling $20,000,000 worth of particle board under the trademark NOVOPLY in the year 1965. If applicant wished to expand its line or extend its family of "NOVO" marks to include NOVOWOOD products, as it has done, we cannot see that the short-lived attempt of the A.E.C. and opposer to constitute novawood as a generic name could prevent it. We think that, on the facts, applicant had the right and that it is superior to any right opposer has shown.

■ With respect to opposer's reliance on section 2(d),[4] opposer relies on the confusion provision and the similarity of novawood, the name, and NOVOWOOD, the trademark. We point out, however, that novawood is not "a mark" and is not asserted as such. Opposer asserts it

only as a generic name which it has the right to use along with other members of the public. It is not seen how applicant's use of NOVOWOOD as a trademark alongside the use of novawood by others as a generic name could create any confusion as to the source of the goods. The *name* novawood, if a name, could not indicate origin in anyone. As to reliance on the trade name provision, opposer's trade name is The American Novawood Corporation, not Novawood Corporation.

■ The manner in which the board approached its decision in its opinion has given rise to opposer's principal argument. The board made the following statement:

> The continued use by opposer of "novawood" is in contradiction to applicant's prior rights in "NOVOPLY" and opposer is therefore not entitled to the use thereof. Accordingly, opposer could not be legally damaged by the registration of "NOVOWOOD" to applicant.

Opposer argues that this was plainly a ruling *on infringement* of applicant's rights in NOVOPLY, a mark different from that sought to be registered, by opposer's use of novawood, and that this was beyond the statutory jurisdiction of the board. Opposer, at oral argument, charged the board with turning the opposition upside down. Opposer says, in effect, that the board was without "jurisdiction" to decide whether applicant's rights are *superior* to those of opposer because to do so is to adjudicate infringement; it complains that United States Plywood has not sued for infringement and therefore opposer has not had the opportunity to present all the defenses which would be possible in an infringement suit. It urges that the board must

4. "No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—

\* \* \* \* \*

(d) consists of or comprises a mark which so resembles a mark registered in the Patent Office or *a mark* or *trade name* previously used in the United States by another and not abandoned, as to be likely, when applied to the goods of the applicant, to cause confusion, or to cause mistake, or to deceive \* \* \*." [Emphasis ours.]

be reversed because the sole basis for its decision was an adjudication of "Applicant's rights stemming from the earlier NOVOPLY trademark use and registration * * *." We see no merit in the argument. In a case such as this, the board is obliged to consider which party has the superior rights and to consider all of the relevant facts bearing thereon. Because one decision the board must make is the same as would be made by a court of general jurisdiction in an infringement suit does not mean it is precluded from making it. It is not adjudicating infringement in the sense of imposing any liability on opposer. All that is being decided here is whether applicant is entitled to a registration. If opposer has any defenses or rights which it could assert if sued on the NOVOPLY or NOVOWOOD marks, which it has not brought forward in this proceeding, it will still have them in the event of an infringement suit and can oppose them to the merely prima facie rights applicant will get from its registration. Clearly the board has jurisdiction to decide whether applicant should get such rights.

 Opposer's next argument is that whether applicant's prior ownership and registration of NOVOPLY gives it rights superior to the rights of opposer in novawood is an issue which applicant failed to plead. We see no merit in this contention. The purpose of pleadings is to apprise a party by fair notice of the case it has to meet. The Federal Rules of Civil Procedure (F.R.C.P.), on which opposer is relying, reject the approach that pleading is a game of skill. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L. Ed.2d 80 (1957). Opposer had fair notice. The file of the opposed application, with which opposer was of course familiar, contains a requirement by the examiner "that claim should be made of record to its 'Novo' prefix registrations" by applicant, to which applicant responded by an amendment making of record its NOVOPLY, NOVOWALL, NOVIDOR, NOVOCORE, NOVOTILE, NOVODOR, and NOVOTEX registra-

tions. After the Notice of Opposition was filed, applicant filed a Motion to Dismiss in which reference was made to these registrations, asserting that in *opposer's* pending application (see note 3, supra) a rejection had been based on them. Testimony of applicant's witnesses was taken with respect to its use of NOVOPLY and other "NOVO" marks without objection that it related to issues not raised by the pleadings. See F.R.C.P. 15(b).

 Lastly, opposer asserts that the evidence does not justify the board's findings. Having reviewed the record, we disagree.

The concept of "damage" from a trademark registration as it arises in opposition proceedings is often a difficult one to come to grips with. In this opposition it seems to take on a rather unusual twist. Opposer, in the posture of its business as it was when the record was made in 1966, was undoubtedly feeling damaged by disturbance of its belief that it was secure in the use of the name novawood that the A.E.C. had led it to think was generic and free for use by all; and at the same time United States Plywood was also feeling damaged by this very thought, foreseeing encroachment on rights attaching to its considerable family of "NOVO" trademarks by the possible development of a NOVA—generic name in the wood-products field. We come back to what we deem to be the only possible solution in such a situation —a decision as to who has the *superior* right and hence the greater damage. The other party must yield, even though, as a practical matter, it is not entirely without damage or the possibility thereof. In this sense, then we accept the conclusion of the board that opposer "could not be *legally* damaged" (emphasis ours).

Section 13 (15 U.S.C. § 1063), which provides for opposition to registration on the principal register, permits anyone "who believes that he would be damaged by the registration" to oppose. But it does not require proof of dam-

age as a condition to the sustaining of the opposition nor does it provide that anyone who shows that he will be damaged by the registration will necessarily succeed in preventing registration. This case and many others do not permit of syllogistic resolution by mere application of statutory language to the facts. If "damage" be the touchstone, which we seriously doubt, then it is necessary as the board did, to qualify the term by the adjective "legal" when deciding that a party who clearly may suffer from the decision in its economic affairs is not going to be "damaged." This is the old legal concept expressed in the phrase *damnum absque injuria*, loss, hurt, or harm without injury in the *legal* sense, redressible by an action. It is a matter of balancing rights and determining whose are superior; that done, the problem is solved. If it must be expressed in terms of damage, then it is appropriate to say that the loser is not "legally damaged," as the board did, but we see no necessity for going beyond a conclusion as to which party has the superior right.

The decision of the board dismissing the opposition is affirmed.

Affirmed.