AMERICAN SECURITY BANK, Appellant,

v.

AMERICAN SECURITY AND TRUST COMPANY, Appellee.

Patent Appeal No. 77–517.

United States Court of Customs and Patent Appeals.

March 2, 1978.

James C. Wray, Honolulu, Hawaii, attorney of record, for appellant.

Solon B. Kemon, Arlington, Va. (Kemon & Estabrook, Arlington, Va.), attorney of record, for appellee.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and MORGAN FORD, Judge, United States Customs Court.

RICH, Judge.

This appeal is from the decision of the Patent and Trademark Office Trademark Trial and Appeal Board (TTAB), 190 USPQ 271 (1976), dismissing an opposition to the registration of AMERICAN SECURITY BANK on application serial No. 461,146, filed June 25, 1973, opposition No. 56,251. The TTAB made its decision on the basis of the pleadings and exhibits attached thereto, a stipulation of facts, and the papers in the application file. We affirm.

The rather simple facts are not in dispute and the appeal presents only questions of law. The facts are as follows:

Appellee, American Security and Trust Company, a District of Columbia corporation, located at 15th Street and Pennsylvania Avenue in Washington, D.C., has used the mark AMERICAN SECURITY for banking services continuously since 1900. October 28, 1958, it obtained Principal Register registration No. 669,094 of AMERICAN SECURITY for "banking services," claiming first use "at least as early as 1900." June 27, 1967, appellee obtained Principal Register registration No. 831,232 of a composite mark consisting of a shield under which are the words AMERICAN SECURITY in large capital letters, beneath which in much small capital letters are the words AND TRUST COMPANY, for "banking

services." Use of this mark since March 29, 1966, was alleged. The opposed application at bar alleges first use by applicant-appellee of AMERICAN SECURITY BANK for banking services on April 1, 1973. It also recites ownership of registrations No. 669,094 and No. 831,232. It is stipulated that appellee has used its full corporate name continuously since at least 1900 "throughout ordinary domestic and foreign banking channels" and has advertised extensively throughout the metropolitan Washington area.

Opposer, American Security Bank, is a corporation of the state of Hawaii, located in the city of Honolulu. It has used its name continuously since 1935 in connection with banking services advertised extensively in Hawaii, and used it "throughout ordinary domestic and foreign banking channels." American Security Bank has been insured by the Federal Deposit Insurance Corporation (FDIC), an agency of the United States Government, continuously since 1935. Opposer relies only on its use of its name, which is identical to the mark appellant seeks to register, and has not pleaded or alleged ·ownership of any registration.

Thus, to summarize the salient facts, applicant-appellee first used AMERICAN SECURITY for banking services, commencing in 1900, and thirty-five years later opposer-appellant commenced the use, as its corporate name, of AMERICAN SECURITY BANK. Thirty-eight years thereafter, appellee commenced the use of AMERICAN SECURITY BANK for banking services. Such services are rendered by both parties "throughout ordinary domestic and foreign banking channels," the meaning of which is not further elucidated by the record. However, it is clear that, whatever the outreach of the domestic and foreign services, opposer operates out of Honolulu and applicant out of Washington, D.C.

On these facts, the TTAB held that appellee "possesses superior rights in the mark for which it seeks registration," citing our decisions in *Hollowform, Inc. v. Delma Aeh*, 515 F.2d 1174, 185 USPQ 790 (Cust. & Pat.App.1975), and *American Novawood*

*Corp. v. U. S. Plywood-Champion Papers Inc.*, 426 F.2d 823, 57 CCPA 1276, 165 USPQ 613 (1970), on which basis it dismissed the opposition. In reaching the conclusion of superior rights in appellee, the TTAB reasoned that it had used AMERICAN SECURITY long prior to opposer's first use of its name and that "the addition of the purely descriptive term 'BANK' to its long-used mark has [not] in any way altered the trademark significance thereof." This we take to be one way of saying that AMERICAN SECURITY and AMERICAN SECURITY BANK are legal equivalents for the purposes of this case, taking into consideration the fact that both are used for banking services. Later in the TTAB opinion it was stated that the marks before it are "legal equivalents."

In support of its view that AMERICAN SECURITY BANK is the "legal equivalent" of AMERICAN SECURITY, which gives appellee the right to regard its use of the latter as equivalent to the use of the former and to carry that use back to 1900, the board cited the following decisions: *Vacuum-Electronics Corp. v. Electronic Engineering Co. of California*, 150 USPQ 215 (TTAB 1966), an opposition to registration of EECO in block letter form based on opposer's use of VEECO since 1955, wherein it was held that applicant had the benefit of the use of EECO since 1953, the letters being "arranged in a diagonally descending line with a circle"; *Architectural Catalog Co. v. F. W. Dodge Corp.*, 1136 F.2d 1008, 30 CCPA 1215, 58 USPQ 405 (1943), an opposition to registration of "Architecture and Design" as a periodical title based on several titles used by opposer and containing dictum that it is the words themselves rather than their type style or arrangement that must be considered on the question of confusion; and *Humble Oil & Refining Co. v. Sekisui Chemical Co. Ltd. of Japan*, 165 USPQ 597, 605 (TTAB 1970), oppositions in which the TTAB held Sekisui to be the prior user on the basis that S–LON and ESLON are "legal equivalents," citing *Vacuum-Electronics*, supra, S–Lon being the form in which the mark was originally used, later changed to ESLON.

Appellant's arguments, in summary, are that it was the first user of AMERICAN SECURITY BANK, that that mark is not the legal equivalent of the mark AMERICAN SECURITY, that it would be damaged by issuance of the requested registration of its name to appellee, and that appellee is not entitled to registration because it is not entitled to the exclusive use of AMERICAN SECURITY BANK in commerce.

Appellee argues simply that the "trademark significance" resides entirely in the words AMERICAN SECURITY, of which it is the prior and registered user, and that the addition of the purely descriptive word "Bank" is no change at all, leaving the marks legally identical or equivalent. Assuming the validity of this legal proposition, appellee then says that our decision in *Hollowform*, supra, is controlling, standing, as it does, for the proposition that when an applicant possesses superior rights in a mark, an opposer who innocently adopts the "same" (meaning legally equivalent) mark at a later date cannot be damaged by registration to the applicant. It says its rights are "vastly superior" to those of appellant who is a "late-comer."

## OPINION

■ Our ruling in *Hollowform* indicates that this court, unless dealing with a concurrent use proceeding, approves the issuance of an unrestricted registration to an applicant having "superior" rights in a mark acquired through *prior* use vis-à-vis an opposer, notwithstanding the opposer may have acquired some rights through *subsequent* innocent adoption and use. However, in *Hollowform*, the marks before us were TOPKAT and TOP KAT. We said that "in contemplation of law" those marks were "identical." That is, of course, not the situation here. Appellee appreciates this

limitation on the significance of *Hollowform* as a precedent in urging that the marks here are "legally identical" and that we are dealing with "legal equivalency of the two marks."

■ Are the marks here legally equivalent? AMERICAN SECURITY is a two-word mark which appears to have originated as the familiar name or nickname of American Security and Trust Company which, though a bank, did not use the term "bank" in its name, so far as the record before us shows.* While AMERICAN SECURITY BANK is a distinguishable, three-word mark, the word "bank" is purely descriptive and adds nothing to the origin-indicating significance of AMERICAN SECURITY. Customers using the services would know they were dealing with a bank. We consider the marks to be legal equivalents. While the facts here are different from those in *Hollowform*, supra, and from the cases cited by the TTAB discussed above, *Hollowform* remains very pertinent. Compare *Ilco Corp. v. Ideal Security Hardware Corp.*, 527 F.2d 1221, 188 USPQ 485 (Cust. & Pat.App.1976); see J. Gilson, *Trademark Protection and Practice* § 3.03, at 3–48.

The situation here is not one where, as appellant argues, the applicant-appellee, as a latecomer, adopted a mark used for thirty-eight years by another as its name; appellee merely added the descriptive word BANK to a mark it had been using for seventy-three years for banking services. Its customers throughout that period always knew that the institution going by the nickname of or using the service mark AMERICAN SECURITY was a bank. AMERICAN SECURITY had been registered by appellee as a mark for banking services fifteen years earlier in 1958, the registration reciting the use since 1900. We

---

* We judicially notice that as of this writing the metropolitan Washington telephone directories list AMERICAN SECURITY BANK at 15th St. and Pennsylvania Avenue and at many branch locations and do *not* list American Security and Trust Company. In deciding this case we are bound by the record before us which contains nothing to show that appellee's name is or ever has been anything other than American Security and Trust Company.

cannot agree with appellant that this registration is "irrelevant" because applied for long after appellant's use of its name began, nor has appellant in any way substantiated its characterization of the registration or the application therefor as "false."

■ Appellant argues that when appellee filed its registration application, appellant was an actual user of the mark sought to be registered, that "trademark law and procedure require that an applicant have an exclusive right to use a mark," citing 15 U.S.C. § 1051 and 37 CFR 2.33 and 4.1, and that appellee did not have such exclusive right, wherefore, "its claim was false." Appellant misreads the cited statute and rules. They require the statement of *beliefs* about exclusive rights, not their actual possession. Appellant has produced no evidence impugning appellee's beliefs.

■ Whatever appellant's right *to use* its name may be—and that is not a question which is before us—appellee's right is, in our judgment, superior to any right of appellant on the only issue we have to consider, namely appellee's right to register.

The TTAB appears to have rested its decision, at least in part, on the legal theory that under the circumstances of this case the opposer cannot be damaged by the registration. We do not rest our decision on that ground but on the ground that, weighing all the circumstances, appellee's rights are superior to those of appellant. No statutory bar to registration has been shown to exist. As we said in our unanimous opinion in *American Novawood*, supra, proof of some damage from the registration is not necessarily enough to prevent registration and, as in that case, "we see no necessity for going beyond a conclusion as to which party has the superior right." 426 F.2d at 828, 57 CCPA at 1282, 165 USPQ at 616–17. And in our opinion in *Hollowform*, supra, unanimous except for Judge Miller, we again rested our decision on the existence

of "superior rights" notwithstanding some apparent regional rights in the opposer.

The decision of the TTAB is *affirmed*. *AFFIRMED*.

BALDWIN, Judge, concurring.

I agree with the result in this case. In an opposition based on section 2(d) (15 U.S.C. § 1052(d)), the Commissioner may not *deny* a registration to an applicant whose rights in a mark are "superior" to the rights of the opposer. In this case, the mark was not "previously used in the United States by another," so the Commissioner is not authorized by section 2(d) to refuse a registration. However, I cannot agree with the interpretation placed on *Hollowform* by the board and by the majority in this case.

The issue whether the Commissioner is required to grant a geographically-restricted registration or otherwise recognize the rights of an opposer when the opposer establishes superior common law rights in a limited market area was not raised by the parties in *Hollowform* and was not raised by the parties in this case. In both cases, the opposer was not asking that the registration be *restricted*, but that it be *denied*. Fashioning a restriction-type remedy is inappropriate when it was not raised or briefed by the parties and when the nature and availability of the remedy is as controversial as are restrictions arising from oppositions. The holding in *Hollowform* was narrow and the majority's extrapolation of *Hollowform* in this case (see the first sentence of the Opinion section stating, without limitation, that an applicant with "superior" rights is entitled to an *unrestricted* registration) is unnecessary and unjustified.

FORD, Judge,* dissenting.

The statement in the majority opinion construing the requirements of § 1 of the Lanham Act, 15 U.S.C. § 1051, as merely requiring "the statement of *beliefs* about exclusive rights, not their actual possession"

---

* The Honorable Morgan Ford of the United States Customs Court sitting by designation pursuant to 28 U.S.C. § 293(d).

appears to be at variance with this court's past interpretations of the requirements of § 1. As stated by Judge Rich for the court in *In re Deister Concentrator Co.,*[1] 289 F.2d 496, 501, 48 CCPA 952, 962, 129 USPQ 314, 320 (1961), "Under section 1, only 'The owner of a trademark' can apply for registration." Ownership of a mark was explained as implying "the right to exclude others." The court further reasoned that "[i]f the law will not protect one's claim of right to exclude others from using an alleged trademark, then he does not own a 'trademark'." 289 F.2d at 501 n. 5, 48 CCPA at 963 n. 6, 129 USPQ at 320 n. 5. This requirement of ownership, bearing on the right to register a mark, was further explained by the court:

> In contemplating the registration of a mark on the Principal Register we must bear in mind the significance of such registration. Under section 7(b) of the Lanham Act (15 U.S.C. 1057(b)) it constitutes "prima facie evidence of the validity of the registration, registrant's *ownership of the mark*, and of *registrant's exclusive right*[2] *to use the mark* in commerce in connection with the goods or services specified in the certificate" (our emphasis). This means . . . that we cannot sanction registration on the Principal Register of anything unless the applicant for registration . . . would have the right under the general law to prevent others from using or copying it.

*Id.* 289 F.2d at 501, 48 CCPA at 962, 129 USPQ at 319–20. On a rather meager record appellant has shown that it has established rights to use the mark AMERICAN SECURITY BANK for banking services in at least the State of Hawaii. I am inclined to agree with the statement of Judge Miller in his dissenting opinion in *Hollowform, Inc. v. Delma AEH,* 515 F.2d 1174, 1178, 185

USPQ 790, 793 (Cust. & Pat.App.1975) wherein it is stated:

> If an opposer shows facts which refute an applicant's claim that applicant is the owner of a trademark and that no one else has the right to use the mark in commerce, the Commissioner has clear authority to deny the application for an unrestricted registration. . . . As this court has pointed out, "the Act does intend . . . that registration and use be coincident so far as possible." *In re E. I. duPont de Nemours & Co.,* 476 F.2d 1357, 1364, 177 USPQ 563, 659 (Cust. & Pat.App.1973).

Neither can I join the concurring opinion of my colleague, Judge Baldwin. Appellant is not relying solely on § 2(d) of the Act as a basis for its opposition. It has argued that appellee does not have an exclusive right to use the mark in commerce (*i. e.*, is not the "owner" of the trademark.)

Furthermore, the board, in basing its decision to dismiss on its conclusion that "opposer cannot . . . be damaged by the granting of such registration," committed error. As stated by this court in *DeWalt, Inc. v. Magna Power Tool Corp.,* 289 F.2d 656, 661, 48 CCPA 909, 917, 129 USPQ 275, 279–80 (1961) (opinion by Rich, J.):

> When the statute, section 13 [15 USC 1063], says that a person who "believes he would be damaged by the registration of a mark" may oppose registration, we take it to mean that if we find clear possibility of damage to established rights of an opposer which are entitled to legal protection, then we shall sustain the opposition. . . .
>
> . . . DeWalt does not have the right to exclude Magna from the use of the words "power shop." To put it in possession of prima facie proof of a right it does not have, which it might at any time decide to assert against Magna,

---

**1.** Admittedly the facts in that case were different. However, the court's statements regarding ownership of a trademark are equally applicable in this case.

**2.** "Exclusive right" means the right to exclude others from using the mark *throughout* the United States. *Giant Food Inc. v. Malone & Hyde, Inc.,* 522 F.2d 1386, 1400, 187 USPQ 374, 385 (Cust. & Pat.App.1975) (Rich, J., dissenting).

would, in our opinion, be damaging to Magna . . . .

It appears appellee does *not* have the right to exclude appellant from the use of the mark AMERICAN SECURITY BANK in at least Hawaii. See 15 U.S.C. § 1115(b)(5). Thus, appellant has shown facts which refute appellee's claim that it is the "owner" of a trademark and has an exclusive right to its use in commerce throughout the United States; appellant clearly would be "damaged" by the grant of an unrestricted registration to appellee.

In view of the foregoing I would reverse the decision of the board.