THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:
January 28, 2010

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re Nielsen Business Media, Inc.
_____

Serial No. 77223725
Serial No. 77223738
_____

Gene S. Winter of St. Onge Steward Johnston & Reens LLC for Neilsen Business Media, Inc.

Julie A. Watson, Trademark Examining Attorney, Law Office 109 (Dan Vavonese, Managing Attorney).
_____

Before Seeherman, Bergsman and Ritchie, Administrative Trademark Judges.

Opinion by Bergsman, Administrative Trademark Judge:

Nielsen Business Media, Inc. ("applicant") filed intent-to-use applications for the mark THE BOLLYWOOD REPORTER, in standard character form, for "newspapers in the field of entertainment," in Class 16 (Serial No. 77223725) and "providing on-line publications in the nature of newspapers in the field of entertainment," in Class 41 (Serial No. 77223738). Applicant claimed ownership of "U.S. Registration Number(s) 0856584, 1140385, 1185696, and

Serial No. 77223725
Serial No. 77223738

others." The registrations are for various forms of the mark THE HOLLYWOOD REPORTER, and they are set forth below.

1. Registration No. 0856584 for the mark THE HOLLYWOOD REPORTER and design, shown below, for a "daily newspaper dealing primarily with the entertainment industry," in Class 16.

**THE HOLLYWOOD REPORTER**

2. Registration No. 1140385 for the mark THE HOLLYWOOD REPORTER and design, shown below, for "a daily newspaper dealing primarily with the entertainment industry," in Class 16.

**THE REPORTER**

3. Registration No. 1185696 for the mark THE HOLLYWOOD REPORTER STUDIO BLU-BOOK and design, shown below, for a "motion picture, television and radio directory issued yearly," in Class 16.



2

Serial No. 77223725
Serial No. 77223738

During the prosecution of the application, applicant also claimed ownership of Registration No. 2245657 for the mark THEHOLLYWOODREPORTER.COM, in typed drawing form, for "providing information in the field of film, television, music and entertainment via a global computer network," in Class 41. In its brief, applicant claimed ownership of Registration No. 3519615, for the mark THE HOLLYWOOD REPORTER, in standard character form, for "printed newspapers, magazines, and periodicals in the field of the entertainment industry," in Class 16 and "providing information in the field of film, television, music and entertainment via the internet," in Class 41.[1]

In response to the refusal to register on the ground that the mark is merely descriptive of the goods, applicant claimed that its mark had acquired distinctiveness, or secondary meaning, and was therefore registrable in accordance with the provisions of Section 2(f) of the Trademark Act of 1946, 15 U.S.C. §1052(f). Applicant asserted that pursuant to Trademark Rule 2.41(b), the mark sought to be registered had acquired distinctiveness by virture of applicant's ownership of the THE HOLLYWOOD

---

[1] We consider the two additional registrations as part of the record because the electronic application form does not permit applicant to list more than three registrations and the Examining Attorney did not object to the applicant's reference to the registrations.

REPORTER registrations for related goods and services. However, the Examining Attorney concluded that the mark THE BOLLYWOOD REPORTER is not the same as or legally equivalent to the mark THE HOLLYWOOD REPORTER, and she refused registration.

The two applications were consolidated in the Board's February 20, 2009 order.

The issue on appeal is whether applicant's ownership of the registrations for THE HOLLYWOOD REPORTER is sufficient to support applicant's claim that the mark THE BOLLYWOOD REPORTER has acquired distinctiveness or secondary meaning.

As noted earlier, the applications at issue are based on an intent to use each mark in commerce as provided under Section 1(b) of the Trademark Act of 1946. Section 2(f) is limited by its terms to "a mark used by the applicant." A claim of distinctiveness under Section 2(f) is normally not filed in a Section 1(b) application before the applicant files an amendment to allege use or a statement of use, because a claim of acquired distinctiveness, by definition, requires prior use. However, an intent-to-use applicant that has used the same mark on related goods or services may file a claim of acquired distinctiveness under Section 2(f) before filing an amendment to allege use or statement

4

of use, if the applicant can establish that, as a result of the applicant's use of the previously registered mark on other goods or services, the mark has become distinctive of the goods or services in the intent-to-use application, and that this previously created distinctiveness will transfer to the goods and services in the intent-to-use application when use in commerce begins. *In re Dial-A-Matress Operating Corp.,* 240 F.3d 1341, 57 USPQ2d 1807, 1812 (Fed. Cir. 2001); *In re Jack B. Binion,* ___ USPQ2d ___ (TTAB December 23, 2009, Serial Nos. 76590702 and 76590729).

Trademark Rule 2.41(b) provides that ownership of a registration of "the same mark" on the Principal Register may be accepted as *prima facie* evidence of acquired distinctiveness. In relying on this rule, an applicant is essentially seeking to "tack" the use of the registered mark to its use, or intended use, of the present mark for purposes of transferring distinctiveness to the new mark. *In re Flex-O-Glass, Inc.,* 194 USPQ 203, 205-206 (TTAB 1977). Thus, the analysis used to determine whether the mark at issue is "the same mark" as its previously registered mark, for purposes of this rule, is the analysis used in tacking cases (*i.e.,* whether the marks are legal equivalents). *In re Dial-A-Matress Operating Corp.,*

Serial No. 77223725
Serial No. 77223738

57 USPQ2d at 1812; *Van Dyne-Crotty, Inc. v. Wear-Guard Corp.,* 926 F.2d 1156, 17 USPQ2d 1866, 1868 (Fed. Cir. 1991).

To meet the legal equivalents test, the marks must be indistinguishable from one another or create the same, continuing commercial impression such that the consumer would consider both marks as the same mark. *In re Dial-A-Matress Operating Corp.,* 57 USPQ2d at 1812; *Van Dyne-Crotty, Inc. v. Wear-Guard Corp.,* 17 USPQ2d at 1868. "[T]he standard of legal equivalence used in reviewing efforts to 'tack' the prior use of one mark onto that of another is higher than that used in evaluating two competing marks. … [E]ven if the two marks are confusingly similar, they still may not be legal equivalents. … [T]he later mark should not materially differ from or alter the character of the mark attempted to be 'tacked.'" *Van Dyne-Crotty, Inc. v. Wear-Guard Corp.,* 17 USPQ2d at 1868.

The marks at issue are not legal equivalents because they have different meanings and engender different commercial impressions. "Bollywood" is "the extravagantly theatrical Indian motion picture industry."[2] "Hollywood" is "the center of the American motion picture industry located

---

[2] MSN.ENCARTA Dictionary (encarta.msn.com) attached to the September 25, 2007 Office Action.

6

Serial No. 77223725
Serial No. 77223738

in Hollywood, California."[3]  THE BOLLYWOOD REPORTER means

and creates the commercial impression of a news source

regarding the Indian movie industry while THE HOLLYWOOD

REPORTER means and creates the commercial impression of a

news source regarding the American movie industry.

Applicant argues that there is only an inconsequential

difference between the marks.

> The only literal difference between the
> marks THE BOLLYWOOD REPORTER and THE
> HOLLYWOOD REPORTER is the substitution
> of the letter H to the letter B.  Both
> BOLLYWOOD and HOLLYWOOD are recognized
> as descriptive terms referencing film
> industries in India and the United
> States respectively.  Therefore, the
> only difference in connotation between
> the marks is a single letter difference
> in a descriptive term. … Indeed, the
> term Bollywood would not exist if it
> were not for the well-known use of the
> word Hollywood.[4]

The substitution of the letter "B" for the letter "H"

is not an inconsequential difference between the marks.  An

inconsequential difference does not change the meaning or

commercial impression engendered by the marks as

applicant's letter substitution does.  *See e.g., In re*

---

[3]  The Random House Dictionary of the English Language
(Unabridged), p. 912 (2nd ed. 1987).  The Board may take judicial
notice of dictionary evidence.  *University of Notre Dame du Lac
v. J. C. Gourmet Food Imports Co.,* 213 USPQ 594, 596 (TTAB 1982),
*aff'd,* 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983).
[4] Applicant's Brief, p. 5.

Serial No. 77223725
Serial No. 77223738

*Dial-A-Matress Operating Corp.,* 57 USPQ2d at 1813 ("1-888-M-A-T-R-E-S-S" is the legal equivalent of "(212) M-A-T-R-E-S" because the difference in spelling between M-A-T-R-E-S-S and M-A-T-R-E-S is immaterial and different area codes are limited by the telephone companies); *American Security Bank v. American Security and Trust Company,* 571 F.2d 564, 197 USPQ 65, 67 (CCPA 1978) (AMERICAN SECURITY is legally equivalent to AMERICAN SECURITY BANK); *Hollowform, Inc. v. Delma AEH,* 515 F.2d 1174, 185 USPQ 790, 790 (CCPA 1975) (TOPKAT and TOP KAT are legally identical marks); *In re Loew's Theaters, Inc.,* 223 USPQ 513, 514 n.5 (TTAB 1984), *aff'd,* 769 F.2d 764, 226 USPQ 865 (Fed. Cir. 1985) ("We do not, however, agree with the Examining Attorney that a minor difference in the marks (i.e., here, merely that the mark of the existing registration is in plural form) is a proper basis for excluding any consideration of this evidence under the rule [2.41(b)]"). In this case, however, the substitution of the letter "B" for the letter "H" is not an immaterial misspelling or pluralization of previously registered mark, nor is it the addition of a generic term to the previously registered mark. Although Bollywood and Hollywood both connote movie industries, they identify *different* movie

8

Serial No. 77223725
Serial No. 77223738

industries that specialize in different types of movies. Consumers will not equate "Bollywood" with "Hollywood."

Because THE HOLLYWOOD REPORTER and THE BOLLYWOOD REPORTER are not legal equivalents, applicant may not rely on its previously registered marks to show that THE BOLLYWOOD REPORTER has acquired distinctiveness in accordance with Trademark Rule 2.41(b).

Decision:  The refusal to register is affirmed.