**In re DIAL–A–MATTRESS OPER-ATING CORPORATION (Serial No. 75/131,355).**

No. 00–1197.

United States Court of Appeals, Federal Circuit.

Feb. 13, 2001.

Arthur L. Plevy, Buchanan Ingersoll, P.C., of Princeton, New Jersey, argued for appellant. With him on the brief was Susan J. Goldsmith.

Albin F. Drost, Acting Solicitor, Office of the Solicitor, of Arlington, Virginia, argued for appellee. With him on the brief were Nancy C. Slutter, Acting Deputy Solicitor; Steven Walsh, and Eric Grimes, Associates Solicitors. Of counsel was John M. Whealan, Solicitor.

Before MAYER, Chief Judge, NEWMAN and SCHALL, Circuit Judges.

MAYER, Chief Judge.

Dial–A–Mattress Operating Corporation (Dial–A–Mattress) appeals the judgment of the Trademark Trial and Appeal Board affirming an examiner's rejection of its intent-to-use application to register "1–888–M–A–T–R–E–S–S" as a service mark. Because the mark is descriptive of the relevant services, and has acquired prima facie distinctiveness as the legal equivalent of one of Dial–A–Mattress' previously-registered marks, we reverse.

### Background

Dial–A–Mattress sells mattresses and related bedding through retail stores and a telephone "shop-at-home" service. In 1996, it filed an intent-to-use application to register "1–888–M–A–T–R–E–S–S" as a service mark for "telephone shop-at-home retail services in the field of mattresses." It claimed that the proposed mark is inherently distinctive, or alternatively, that it acquired distinctiveness and was registerable pursuant to section 2(f) of the Trademark Act, 15 U.S.C. § 1052(f). In support of its application, Dial–A–Mattress cited a number of its previously-registered marks, including: "DM DIAL A MATRES" (and design) (Registration No. 1,554,222, obtained August 29, 1989); "(212) M–A–T–T–R–E–S" (Registration No. 1,589,453, obtained March 27, 1990) (the "(212)" portion of the mark is depicted with broken lines to indicate that "the area code will change"); "1–800–MATTRES, AND LEAVE OFF THE LAST S THAT'S THE S FOR SAVINGS" (Registration No. 1,728,356, obtained October 27, 1992); and "DIAL A MATTRESS," (Registration No. 1,339,658, obtained January 26, 1993).

Dial–A–Mattress also presented a declaration of its assistant general counsel, Robert Isler, in which he said that it nationally advertised the (212) M–A–T–T–R–E–S mark, and provided exemplars of that mark's use. He said that Dial–A–Mattress sought to register "1–800–MATRESS," "1–888–MATRESS" and "1–888–MAT-TRES" to further protect its existing

marks, and because it received an "inordinate number" of customer calls on these lines (one million in sixteen months after July 1996). Isler inferred that people who called on these lines were attempting to reach Dial–A–Mattress, but were either unfamiliar with the correct spelling of "mattress" or misdialed.

After several office actions, the examiner rejected the "1–888–M–A–T–R–E–S–S" application because the mark is generic for the relevant services and therefore unregisterable. The examiner found that even if it is not generic, it is "merely descriptive" and Dial–A–Mattress presented insufficient evidence of acquired distinctiveness to permit registration of the mark under section 2(f) of the Trademark Act.

Dial–A–Mattress appealed the rejection to the Trademark Trial and Appeal Board, which affirmed. Because there was no dispute that the (888) toll-free area code designation is devoid of source-indicating significance, that "M–A–T–R–E–S–S" is the legal equivalent of the word "mattress," and that "mattress" is generic for the identified service, the board determined that the mnemonic "1–888–M–A–T–R–E–S–S" is generic.

The board also affirmed in the alternative, holding that the proposed mark is descriptive, and that Dial–A–Mattress presented insufficient evidence of acquired distinctiveness to permit registration. It determined that none of Dial–A–Mattress' previously-registered marks were the legal equivalents of its proposed mark; therefore they were not prima facie evidence of acquired distinctiveness. It also found the Isler declaration insufficient to demonstrate acquired distinctiveness because it did not show that customers who called the 1–888–M–A–T–R–E–S–S line understood it to be identified with Dial–A–Mattress. This appeal followed.

## Discussion

■ We review the board's conclusions of law de novo and affirm its findings of fact if they are supported by substantial evidence. *On–Line Careline, Inc. v. Am. Online, Inc.*, 229 F.3d 1080, 1085, 56 USPQ2d 1471, 1475 (Fed.Cir.2000). We first address whether the mark "1–888–M–A–T–R–E–S–S" is generic and therefore unregisterable as a trademark. Generic terms are common names that the relevant purchasing public understands primarily as describing the genus of goods or services being sold. *See In re Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 828 F.2d 1567, 1569–70, 4 USPQ2d 1141, 1142 (Fed. Cir.1987); *H. Marvin Ginn Corp. v. Int'l Ass'n of Fire Chiefs, Inc.*, 782 F.2d 987, 989–90, 228 USPQ 528, 530 (Fed.Cir.1986). They are by definition incapable of indicating a particular source of the goods or services, and cannot be registered as trademarks; doing so "would grant the owner of the mark a monopoly, since a competitor could not describe his goods as what they are." *In re Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 828 F.2d at 1569, 4 USPQ2d at 1142.

■ The determination of whether a mark is generic is made according to a two-part inquiry: "First, what is the genus of the goods or services at issue? Second, is the term sought to be registered ... understood by the relevant public primarily to refer to that genus of goods or services?" *H. Marvin Ginn Corp.*, 782 F.2d at 990, 228 USPQ at 530. Placement of a term on the fanciful-suggestive-descriptive-generic continuum is a question of fact. *In re Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 828 F.2d at 1569–70, 4 USPQ2d at 1142–43. The Director of the United States Patent and Trademark Office (Director) bears the burden of proving a term generic. *In re The Am. Fertility Soc'y*, 188 F.3d 1341, 1345, 51 USPQ2d 1832, 1834 (Fed.Cir. 1999). Any competent source suffices to show the relevant purchasing public's understanding of a contested term, including purchaser testimony, consumer surveys, dictionary definitions, trade journals, newspapers and other publications. *In re Merrill Lynch, Pierce, Fenner & Smith,*

*Inc.,* 828 F.2d at 1570, 4 USPQ2d at 1143; *In re Bed & Breakfast Registry,* 791 F.2d 157, 160, 229 USPQ 818, 819 (Fed.Cir. 1986).

Where a term is a "compound word" (such as "Screenwipe"), the Director may satisfy his burden of proving it generic by producing evidence that each of the constituent words is generic, and that "the separate words joined to form a compound have a meaning identical to the meaning common usage would ascribe to those words as a compound." *In re Gould Paper Corp.,* 834 F.2d 1017, 1018, 5 USPQ2d 1110, 1110 (Fed.Cir.1987). However, where the proposed mark is a phrase (such as "Society for Reproductive Medicine"), the board "cannot simply cite definitions and generic uses of the constituent terms of a mark"; it must conduct an inquiry into "the meaning of the disputed phrase as a whole." *In re The Am. Fertility Soc'y,* 188 F.3d at 1347, 51 USPQ2d at 1836. The *In re Gould* test is applicable only to "compound terms formed by the union of words" where the public understands the individual terms to be generic for a genus of goods or services, and the joining of the individual terms into one compound word lends "no additional meaning to the term." *Id.* at 1348–49, 51 USPQ2d at 1837.

Here, there is no dispute that the genus is telephone shop-at-home services for retail mattresses. Nor does Dial–A–Mattress contest the following evidence and legal conclusions offered by the Director: (1) the area code designation (888) in the proposed mark by itself is devoid of source-indicating significance; (2) "matress" is the legal "equivalent" of the word "mattress"; and (3) the word "mattress" standing alone is generic for retail services in the field of mattresses.

Instead, Dial–A–Mattress contends that the board erred in holding this quantum of evidence sufficient to demonstrate that the term "1–888–MA–T–R–E–S–S" is generic. It specifically challenges the rule the board adopted in rendering its decision: "[I]f the mark sought to be registered is comprised solely of the combination of a designation (such as a toll-free telephone area code) which is devoid of source-indicating significance, joined with material which, under the *Ginn* two-part test, is generic for the identified goods or services, then the mark as a whole is generic and unregisterable." *In re Dial A Mattress Operating Corp.,* 52 USPQ2d at 1913. Dial–A–Mattress argues that *Ginn* and *In re The American Fertility Society,* require evidence that the proposed mark as a whole is understood by the relevant public to refer to the relevant genus of goods or services. Because the Director offered no proof of the meaning the relevant purchasing public ascribes to the term in its entirety, Dial–A–Mattress contends the term is not generic.

The Director says the board's test is consistent with *In re Gould* arguing that the proposed mark is more akin to a compound word than to a phrase. He argues that because it is undisputed that both (888) and "MATRESS" are generic, joining the two together creates a term with no additional meaning than the individual meanings of each of its constituent parts. However, the Director provides no justification for this conclusion. Instead, he relies on the reasoning of *Dranoff–Perlstein Assocs. v. Sklar,* 967 F.2d 852, 859–60, 23 USPQ2d 1174, 1180 (3rd Cir.1992), that trademark protection should not be granted to telephone numbers composed of a generic mnemonic word because it would preclude competitors from the use of this tool, and "achieve the kind of unfair competitive advantage the genericness doctrine is supposed to prevent."

We conclude that the board applied the wrong test in holding that the Director meets his burden of proving an alphanumeric telephone number generic merely by showing that it is composed of a non-source-indicating area code and a generic term. "The commercial impression of a trade-mark is derived from it as a whole, not from its elements separated and

considered in detail. For this reason, it should be considered in its entirety...." *Estate of P.D. Beckwith, Inc. v. Comm'r of Patents*, 252 U.S. 538, 545–46, 40 S.Ct. 414, 64 L.Ed. 705 (1920). The Director must produce evidence of the meaning the relevant purchasing public accords the proposed mnemonic mark "as a whole." *In re The Am. Fertility Soc'y*, 188 F.3d at 1348, 51 USPQ2d at 1836; *see also H. Marvin Ginn Corp.*, 782 F.2d at 990–91, 228 USPQ at 530. *In re Gould* does not apply here because "1–888–M–A–T–R–E–S–S" a mnemonic formed by the union of a series of numbers and a word bears closer conceptual resemblance to a phrase than a compound word. *See In re The Am. Fertility Soc'y*, 188 F.3d at 1348–49, 51 USPQ2d at 1837 (explicitly limiting the holding of *In re Gould* to "compound terms formed by the union of words"). It is devoid of source-indicating significance, but "(888)" is not a word and is not itself a generic term for selling by telephone.

Analyzing the "1–888–M–A–T–R–E–S–S" mark as a whole, substantial evidence does not support the conclusion that the mark is generic. There is no record evidence that the relevant public refers to the class of shop-at-home telephone mattress retailers as "1–888–M–A–T–R–E–S–S." *See H. Marvin Ginn Corp.*, 782 F.2d at 991, 228 USPQ at 532. "Telephone shop-at-home mattresses" or "mattresses by phone" would be more apt generic descriptions. Like the title "Fire Chief" for a magazine in the field of fire fighting, a phone number is not literally a genus or class name, but is at most descriptive of the class. *Id.* Moreover, like the term "cash management account," "1–888–M–A–T–R–E–S–S" does not "immediately and unequivocally" describe the service at issue. *See In re Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 828 F.2d at 1571, 4 USPQ2d at 1144.

Finally, given that telephone numbers consist of only seven numbers and typically can be used by only one entity at a time, a competitor of a business that has obtained a telephone number corresponding to a "mattress" mnemonic for all practical purposes is already precluded from using and promoting the number. A rule precluding registerability merely shifts the race from the Trademark Office to the telephone company. Dial–A–Mattress also observes that its competitors have not been precluded from using mnemonic telephone numbers as marketing tools (*e.g.*, "1–800–SLEEPY'S" (U.S.Reg. No. 1,946,855), "1(800) BUY A BED" (U.S.Reg. No. 2,000,477), and "1–800 TRY A BED" (U.S.Reg. No. 1,728,378)) and would of course remain free to use "mattress" to describe their goods and services in formats other than the promotion of mnemonic telephone numbers consisting of the term. That the law of unfair competition also may protect a first user of a mnemonic telephone number from a competitor's promotion of a confusingly similar mnemonic, *see, e.g., Dial–A–Mattress Franchise Corp. v. Page*, 880 F.2d 675, 11 USPQ2d 1644 (2d Cir.1989), does not change this result.

 We next examine whether the proposed mark is "merely descriptive" of the recited services and registerable upon a showing of acquired distinctiveness. A trademark is descriptive if it immediately conveys knowledge of the ingredients, qualities or characteristics of the product. *See In re Quik Print Copy Shops, Inc.*, 616 F.2d 523, 525, 205 USPQ 505, 507 (CCPA 1980). Dial–A–Mattress argues that its mark is not descriptive because, although it suggests the nature of its services, it does not describe their full scope and extent. This argument is unavailing because the mark need not recite each feature of the relevant goods or services in detail to be descriptive. *See In re H.U.D.D.L.E.*, 216 USPQ 358 (TTAB 1982). Although "1–888–M–A–T–R–E–S–S" is not generic for a service offering mattresses by telephone, it immediately conveys the impression that a service relating to mattresses is available by calling the telephone number.

■ A descriptive mark can be registered on the Principal Register only if it has acquired secondary meaning. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992); *see also* 15 U.S.C. § 1052(f) (West Supp.2000). To establish secondary meaning or "acquired distinctiveness", an applicant must show that "in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." *Inwood Labs., Inc. v. Ives Labs.*, 456 U.S. 844, 851 n. 11, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982).

■ Dial–A–Mattress filed an "intent-to-use" application for the registration of the mark "1–888–M–A–T–R–E–S–S." Because by definition registration based on acquired distinctiveness requires prior use of the mark, an applicant who has applied to register a mark based on its intent to use the mark ordinarily will not claim acquired distinctiveness unless it seeks to show that it has used the mark since the date of its application and the mark has acquired secondary meaning. *See* 15 U.S.C. §§ 1051(b)-(d), 1052 (1997 and West Supp.2000); 37 C.F.R. § 2.41(a) (2000); *see also* Trademark Manual of Examination and Procedure § 1219.09(a) (1997). However, Trademark Rule 2.41(b) provides that "[i]n appropriate cases, ownership of one or more prior registrations on the Principal Register or under the Act of 1905 of the same mark may be accepted as prima facie evidence of distinctiveness." 37 C.F.R. § 2.41(b) (2000). In addition to the ownership of prior registrations, further evidence of acquired distinctiveness may be required. *Id.* Thus, an applicant can establish acquired distinctiveness in an intent-to-use application where it can show that "same mark" acquired distinctiveness for related goods or services, and that this acquired distinctiveness will transfer to the goods or services specified in the application when the mark is used in connection with them. *See* TMEP § 1219.09(a) (1997) (listing cases).

■ A proposed mark is the "same mark" as previously-registered marks for the purpose of Trademark Rule 2.41(b) if it is the "legal equivalent" of such marks. A mark is the legal equivalent of another if it creates the same, continuing commercial impression such that the consumer would consider them both the same mark. Whether marks are legal equivalents is a question of law subject to our *de novo* review. No evidence need be entertained other than the visual or aural appearance of the marks themselves. *Van Dyne – Crotty, Inc. v. Wear–Guard Corp.*, 926 F.2d 1156, 1159, 17 USPQ2d 1866, 1868 (Fed.Cir.1991).

Dial–A–Mattress argues that its previously-registered marks, especially "(212)–M–A–T–T–R–E–S" (registered for "retail outlet services and retail store services featuring mattresses") and the "1–800–MATTRES, AND LEAVE OFF THE LAST S THAT'S THE S FOR SAVINGS" mark (registered for "retail outlet services and retail direct sale of mattresses" with "1–800" disclaimed), are the legal equivalents of "1–888–M–A–T–R–E–S–S." It argues that the proposed mark differs from the first only by the specification of the exact area code and a minor misspelling, and from the second, only by the addition of an extraneous phrase. The board held that the dominant theme of Dial–A–Mattress' previous marks and advertising was the "leave off the last S that's the S for savings." Because "1–888–M–A–T–R–E–S–S" does not "leave off the last 'S,' " the board concluded that it does not create the same commercial impression as Dial–A–Mattress' previously-registered marks.

The Director further argues here that, because the area code in the (212) mark was subject to change, it is a phantom mark that is not registerable and should not be given much weight. But the difference in spelling between "M–A–T–R–E–S–S" and "M–A–T–T–R–E–S" is immaterial, and the Director conceded the legal equivalence of "matress" and "mattress" for the purposes of genericness. *See In re Loew's*

*Theaters, Inc.,* 223 USPQ 513, 514 n. 5 (TTAB 1984), *aff'd,* 769 F.2d 764, 226 USPQ 865 (Fed.Cir.1985) ("We do not, however, agree with the Examining Attorney that a minor difference in the marks (i.e., here, merely that the mark of the existing registration is in plural form) is a proper basis for excluding any consideration of this evidence under the rule."). Although the registration of the "(212) M–A–T–R–E–S–S" mark is a "phantom" mark, the use of which we have questioned, *see In re Int'l Flavors & Fragrances, Inc.,* 183 F.3d 1361, 1365, 1368, 51 USPQ2d 1513, 1516–17 (Fed.Cir.1999), it is apparent in the present case that the missing information in the mark is an area code, the possibilities of which are limited by the offerings of the telephone companies. "1–888–M–A–T–R–E–S–S" is the legal equivalent of the "(212) M–A–T–T–R–E–S" mark. *See Am. Sec. Bank v. Am. Sec. Bank & Trust Co.,* 571 F.2d 564, 567, 197 USPQ 65, 67 (CCPA 1978) (holding "American Security" legally equivalent to "American Security Bank").

As the "same mark" or the "legal equivalent" of "(212) M–A–T–T–R–E–S," the "1–888–M–A–T–R–E–S–S" mark is entitled to rely on the former as prima facie evidence of acquired distinctiveness. *See* 37 C.F.R. § 2.41(b) (2000). Thus, Dial–A–Mattress can establish acquired distinctiveness in its intent-to-use application based on the premise that the "(212) M–A–T–R–E–S–S" mark acquired distinctiveness for related goods or services, and a further showing that this acquired distinctiveness will transfer to the goods or services specified in the application when the mark is used in connection with them. *See* TMEP § 1212.09(a) (1997).

The services specified for the (212) mark, "retail outlet services and retail store services featuring mattresses," are closely related to those specified for the "1–888–M–A–T–R–E–S–S" mark, "telephone shop-at-home retail services in the field of mattresses"; in fact, the latter can be considered a subset of the former. Al-

though we agree that the Isler declaration, standing alone, would be insufficient evidence of acquired distinctiveness because it does not allege with particularity the number of people who called the "M–A–T–R–E–S–S" lines as opposed to the "M–A–T–T–R–E–S" lines, and does not offer direct evidence that customers associate the "1–888–M–A–T–R–E–S–S" term with Dial–A–Mattress, we also agree that given the similarity of the mnemonics and the widespread propensity for misspelling, it is likely that at least some consumers were attempting to reach Dial–A–Mattress. Nevertheless, in this case, the prima facie showing of acquired distinctiveness together with the close relationship of the goods and services at issue are enough to support registration of the term pursuant to section 2(f).

### Conclusion

Accordingly, the judgment of the Trademark Trial and Appeal Board is reversed.

REVERSED