9/25/01

THIS DISPOSITION IS NOT
CITABLE AS PRECEDENT
OF THE TTAB

Paper No. 14
DEB

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re Tickets.com
_____

Serial No. 75/565,599
_____

Michelle D. Kahn and Michelle Howard MacKenzie of Sheppard
Mullin Richter & Hampton, LLP for Ticket.com .

Scott Baldwin, Trademark Examining Attorney, Law Office 112
(Janice O'Lear, Managing Attorney).
_____

Before Hanak, Quinn and Bucher, Administrative Trademark
Judges.

Opinion by Bucher, Administrative Trademark Judge:

Ticket.com seeks to register on the Principal Register

for "online information services, namely, the provision of

information relating to travel via global computer network,"

in International Class 39; "online information services,

namely, the provision of information relating to shows and

other entertainment events via global computer network," in

International Class 41; and "online travel agency services,

namely making reservations and bookings for temporary lodging via global computer network," in International Class 42.[1]

The Trademark Examining Attorney has refused registration under Section 2(e)(1) of the Trademark Act, 15 U.S.C. §1052(e)(1), on the grounds that the entire composite mark applicant seeks to register is merely descriptive as applied to the identified services.[2]

---

[1]  Application Serial No. 75/565,599, filed on October 6, 1998, based upon applicant's allegation of use in commerce since August 1, 1997.
[2]  Applicant's original recitation of services was "on-line ticketing services, namely, travel agency services, ticket agency services and the provision of information relating to events, travel or tickets via a global computer network, in International Class 42." In response to the Trademark Examining Attorney's requirement to amend its recitation of services, applicant amended its recital to "online travel agency and travel information services, namely, making reservations and bookings for transportation and the provision of information related to travel, all via global computer network," in International Class 39; "online ticketing and information services, namely, arranging for tickets for shows and other entertainment events and the provision of information relating to shows and other entertainment events, all via global computer network," in International Class 41; and "online travel agency services, namely, making reservations and bookings for temporary lodging via global computer network," in International Class 42. The Trademark Examining Attorney appeared to accept this amended recitation at the time of the final refusal. Then, with the request for reconsideration on the issue of mere descriptiveness, applicant submitted the current recitation, which the Trademark Examining Attorney also accepted.
    Finally, in an earlier response to an Office action, applicant had indicated a willingness to disclaim the prefix ("1•800") portion of the mark " … in the event the Examining Attorney considers the telephone area-code designation descriptive of services offered via the Internet." However, by the time of the appeal brief, this offer had been withdrawn.

Applicant has appealed. Both applicant and the Trademark Examining Attorney have filed briefs, but applicant did not request an oral hearing. We affirm the refusal to register.

It is the Trademark Examining Attorney's position that the word TICKETS is merely descriptive of a feature or characteristic of applicant's online services. Applicant's home page (http://www.tickets.com/) is included as a specimen of record, and the words "ticket," "tickets" and "ticketing" occur in the ordinary sense of those words more than a dozen times on applicant's home page alone.

Applicant, on the other hand, in urging reversal of the refusal to register, argues that the prefix ("1-800") portion of this mark cannot be held merely descriptive of services offered via the Internet. Furthermore, applicant argues that inasmuch as its amended recitation of services excludes all the specific references to actual ticketing services, the word "Tickets" is not merely descriptive of its various "online information services."

In response to this argument, the Trademark Examining Attorney states the following:

> … [A]pplicant's current recitation of services is clearly broad enough to include the "provision of *ticketing* information … [in classes 39 and 41]." (emphasis in original).

In addition to arguing that alpha-numerics are merely descriptive of services when first used as a service mark *qua* vanity telephone number, the Trademark Examining Attorney also argues that the same matter does not become inherently distinctive just because the services are provided via the Internet.

The test for determining whether a mark is merely descriptive is whether the involved term immediately conveys information concerning a significant quality, characteristic, function, ingredient, attribute or feature of the product or service in connection with which it is used, or intended to be used. *In re Engineering Systems Corp*., 2 USPQ2d 1075 (TTAB 1986); *In re Bright-Crest, Ltd*., 204 USPQ 591 (TTAB 1979). It is not necessary, in order to find a mark merely descriptive, that the mark describe each feature of the goods or services, only that it describe a single significant quality, feature, etc. of the goods or services. *In re Venture Lending Associates*, 226 USPQ 285 (TTAB 1985). Further, it is well-established that the determination of mere descriptiveness must be made not in the abstract or on the basis of guesswork, but in relation to the goods or services for which registration is sought, the context in which the mark is used, and the impact that it is likely to make on the average

purchaser of such goods or services.  *In re Recovery*, 196 USPQ 830 (TTAB 1977).

In turning first to the alpha or letter portion of this alleged mark (the word "tickets"), we find from this record that the evidence is overwhelming that the word "tickets" is merely descriptive of applicant's services, even after all the earlier "ticket" and "ticketing" language has been scrubbed from the recitation of services.[3]

In the context of the entirety of the applied-for mark [1•800•TICKETS (stylized)], we begin with the observation that actual vanity telephone numbers like the alleged mark at issue herein are not considered to be inherently distinctive matter, even when used in advertising, for example, in the form of a service mark.  Rather, this alleged mark is deemed to be merely descriptive because it immediately conveys the impression that a service relating to tickets is available by calling the toll free telephone number.  *See In re Dial-A-Mattress Operating Corp*., 240 F.3d 1341, 57 USPQ2d 1807, 1812 (Fed. Cir. 2001)) [Applicant's "1•888•MATRESS" mark is merely descriptive of applicant's service offering mattresses by telephone because it immediately conveys the impression that a

---

[3]    The specimens of record, for example, shown on page 6, *supra*, contain the word "Ticket" or "Tickets" three times within the three distinct pockets of information or alleged trademarks shown thereon.

service relating to mattresses is available by calling the telephone number.]  We must also consider the impact that this matter is likely to make on the average purchaser of such services.  In considering closely the specimens of record, we note that the particular manner in which this vanity telephone number is stylized (viz., the raised dots, the "1-800" numerical prefix being somewhat smaller than the letter portion of the vanity telephone number) accentuates its look and feel as a telephone number:



[4]

It also is clear from this record that even if "services offered via the telephone" are not part of the instant recitation, applicant indeed uses and promotes toll free telephone numbers like 1-888-TICKETS and 1-800-TICKETS for

---

[4]     Upon viewing the above image from the specimens of record, one could even argue that because the telephone number is subordinate to applicant's prominently displayed house mark, this matter will be perceived as nothing more than a telephone number, and not as a service mark at all.  However, inasmuch as this was not litigated, we assume the Trademark Examining Attorney decided that the vanity telephone number would indeed be perceived as a service mark in this context.  Arguably this is analogous to reported cases from the Board and our reviewing Court on trade name usage.  In those cases,

ticketing services related to the upcoming Winter Olympic games.[5]  Nonetheless, applicant argues that the *Dial-a-Mattress* case, *supra*, is not controlling in the instant case because the recitation of services herein does not include services being offered over the telephone:

> Applicant's mark … is far different form the mark at issue in *In re Dial a Mattress Operating Corp*.  Most significantly, unlike the applicant in *In re Dial a Mattress Operating Corp*., Applicant is not seeking to register its mark for use in connection with goods or services offered via the telephone.  Rather, Applicant is seeking to register its mark only in connection with services accessed via the Internet.  An area code designation cannot seriously be considered descriptive of online services.  Indeed, no reasonable consumer would ever assume that such service are available under a mark that includes the toll-free area code designation "1•800" and does not include the term ".com."  Thus, the prefix portion of Applicant's mark does not describe the relevant services and is, at the very least, suggestive of online services.

(Applicant's appeal brief, p. 5).

---

the trade name, as used in context, may well not be perceived as a source indicator but merely as part of a company's name and address.

[5]    Applicant promotes its connection with the Salt Lake Organizing Committee for the Olympic Games ("SLOC") for those wanting to order tickets for the 2002 Winter Olympic:

> QUESTIONS:  1-888-tickets
> www.ksl.com/TV/olympics/2002/tix1009.php
>                             and
> STILL HAVE A QUESTION?
> Call 1-800-TICKETS between 10 a.m. and 8 p.m. (Mountain Time) Monday through Friday, excluding holidays, or Saturday between 10 a.m. and 6 p.m., you will be able to speak directly with a customer service representative.
> http://www.tickets.com/olympics/single_questions.html

In response to applicant's contention that "[a]pplicant is not seeking to register its mark for use in connection with goods or services offered via the telephone," the Trademark Examining Attorney has shown that this matter doubles as a URL.  If one types into one's Web browser http://www.1800tickets.com/, one will end up at http://www.tickets.com/, with the following masthead:



Hence, applicant has matter ("1•800•TICKETS") that looks like a vanity telephone number, and indeed functions as such in ordering tickets for the Salt Lake Olympic Winter Games.  This same matter, comprising eleven alpha-numeric characters, also serves as a second-level domain name, taking one to applicant's home page on the Internet.  On this page, one again finds quite prominently displayed ways to order tickets, *inter* alia, for the Salt Lake Olympic games.

Accordingly, if this matter is viewed as a source indicator at all, we agree with the Trademark Examining Attorney that consumers are likely to understand, from the term 1•800•TICKETS, that at the very least, applicant offers a variety of mutually-reinforcing means for providing prospective customers with information about various kinds of tickets.  The specimens of record demonstrate that applicant

provides ticketing news as well as actual tickets through its Web site.  Tickets and ticket information are a significant characteristic of applicant's services.[6]  While applicant has amended its recitation of services to delete reference to the words "ticket" and "ticketing," applicant had earlier conceded that this is an aspect of its services:

> As applied to actual ticketing services, Applicant's mark arguably may be construed as

---

[6]    To quote from applicant's Web site (emphasis supplied):

**Welcome!**

We founded Tickets.com in 1996 to fundamentally change the sports and entertainment <u>ticket</u> industry by empowering you - the consumer.  We're building a new kind of organization dedicated to the principle that purchasing <u>tickets</u> for a great event should be quick, convenient and reliable.

Our mission is to leverage the power of the Internet to create the most compelling <u>ticketing</u> solutions for consumers, venues, promoters, and artists.  By building strong relationships with arenas, concert halls, performers, and sports teams, we're eliminating the complicated and frustrating process normally associated with purchasing <u>tickets</u>.  And, if you're looking for something that we don't happen to offer, we'll put you in a position to purchase the <u>tickets</u> - even if that means sending you directly to our competition.

Perhaps the most exciting feature we offer is our personalized tool My <u>Tickets</u>.  Give us your preferences in sports, entertainment, and other special events and we'll keep track of it all for you.  We'll even send you e-mail reminders when your favorite events are coming up.

Thanks for your interest in this exciting challenge.  We hope you'll join us in revolutionizing the way the world buys <u>tickets</u>.

Kind regards,

**Tom Gimple**
Chief Executive Officer
http://www.tickets.com/aboutus.html

> descriptive. Accordingly, if deletion of
> Applicant's ticketing services from the
> recitation of services would cure the perceived
> descriptiveness of that term, Applicant would
> be willing to so amend its Application …

(Applicant's response of January 3, 2000, p. 4, fn 1).

The fact that applicant's Web site provides ticketing information and makes tickets available online is certainly not negated merely because the current recitation of services no longer specifies this aspect of applicant's services. Moreover, it is clear that at the very least, the offering of ticketing news is encompassed within applicant's services, even as currently identified.

This matter has the look and feel of a vanity telephone number. Yet applicant would have us find that this matter actually functions as an arbitrary source indicator when it appears on the masthead of applicant's pages on the Internet. Furthermore, we are told that it is irrelevant to our inquiry herein that this matter actually functions as a telephone number (1-800-TICKETS), where live operators provide ticketing information and facilitate the actual purchase of tickets. Secondly, we are told that it is irrelevant to our inquiry herein that this matter actually functions as a second-level domain name within a URL (www.1800tickets.com), which site is also designed to provide ticketing information and facilitate actual ticketing. Finally, in spite of applicant's having

scrubbed the recital of services to remove the words "ticket," "tickets" and "ticketing," the record demonstrates that "tickets" are indeed the primary purpose of the Web site as well as the vanity telephone number.

Accordingly, to the extent the term 1•800•TICKETS functions as a service mark at all, when applied to applicant's services it immediately describes, without conjecture or speculation, a significant feature or characteristic of applicant's services.  In particular, it consists of a familiar and structured mnemonic that functions as a telephone number and also as a Web address, both of which provide information about the availability of "tickets" for sporting and other entertainment events.  Nothing requires the exercise of imagination, cogitation, mental processing or gathering of further information in order for prospective customers of applicant's services to readily perceive the merely descriptive significance of the term 1•800•TICKETS as it pertains to applicant's services.  *See* *In re Dial-A-Mattress Operating Corp*., *supra*.

Finally, late in the appeal process, applicant submitted thirteen specifically-identified, third-party registrations it argues are relevant to the merits of this case.[7]  As noted by

---

[7]    In a companion case (Application Serial No. 75/565,580), applicant also asked for a suspension of the appeal based on these

the Trademark Examining Attorney, third-party registrations are not conclusive on the question of descriptiveness. We must decide each case on its own merits. Even if some prior registrations had some characteristics similar to the present application, the Office's allowance of such prior registrations does not bind the Board or our reviewing Court. *In re Nett Designs Inc*., 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001); and *In re Owens-Corning Fiberglas Corp*., 774 F.2d 1116, 1127, 227 USPQ 417, 424(Fed. Cir. 1985).

Furthermore, the only mark analogous to applicant's mark herein is 1-800 GET LOAN, for "mortgage brokerage and lending." Even 1-800-FLOWERS.COM is a hybrid, comprising a well known vanity telephone number with a clear indication of being the URL for applicant's Web site. Yet both of these marks were registered pursuant to Section 2(f) of the Trademark Act. Such registrants have essentially conceded that the matter to which it pertains was not inherently distinctive (and thus not registrable absent a showing of acquired distinctiveness).

In conclusion, we find that prospective customers of applicant's services will readily perceive the merely

---

newly-issued registrations. In that case, the Trademark Examining Attorney considered these registrations and was not persuaded by them. Accordingly, we are proceeding to final decision in the instant appeal without imposing further delay.

descriptive significance of the term 1•800•TICKETS as it

pertains to applicant's services.

Decision:  The refusal to register is affirmed.