THIS OPINION
IS A CITABLE
PRECEDENT OF
THE TTAB

Mailed: February 15, 2007

UNITED STATES PATENT AND TRADEMARK OFFICE
————

Trademark Trial and Appeal Board
————

Kellogg Company
v.
General Mills, Inc.
————

Opposition No. 91125884
to Application No. 75945433

ON REMAND
From
United States District Court
Eastern District of Michigan, Southern Division

————

Lisbeth Coakley of Harness, Dickey & Pierce for Kellogg Company.

Joshua J. Burke, Esq. for General Mills, Inc.
————

Before Quinn, Walters and Holtzman, Administrative Trademark Judges.

Opinion by Walters, Administrative Trademark Judge:

Kellogg Company filed its opposition to the application of General Mills, Inc. to register the mark CINNAMON TOAST CRUNCH for "cereal derived ready-to-eat food bar," in

International Class 30.[1]  Following discovery, the case proceeded through trial and was fully briefed by both parties.  The record consists only of the pleadings and the file of the involved application.  The parties submitted no testimony or other evidence during their respective trial periods.  With its brief, opposer submitted a picture of the packaging used by applicant for the identified goods, noting that the mark is actually in use.  Applicant stated in its brief that it did not object to this evidence and acknowledged that its mark is in use.  We considered this material to be of record.

On September 14, 2004, the Board issued its decision dismissing the opposition due to opposer's failure to establish its standing to bring the opposition.  Opposer sought review of the Board's decision in the United States District Court, Eastern District of Michigan, Southern Division (Case No. 04-74439).  On July 26, 2006, the District Court issued an order concluding that standing had been established and remanding the opposition to the Board

---

[1] Application Serial No. 75945433, filed February 25, 2000, based upon an allegation of a bona fide intention to use the mark in commerce in connection with the identified goods.  The application includes the statement that applicant is the owner of registration nos. 1346597 and 1681353.  Applicant initially offered a disclaimer of the individual words CINNAMON and TOAST and then withdrew the disclaimer and, instead, submitted its declaration of acquired distinctiveness under Section 2(f) of the Trademark Act.  The examining attorney allowed the application for publication, the mark was subsequently published, and this opposition ensued.

for "such proceedings that are consistent with this decision."  The Court stated, *inter alia*, the following:

> Following its review of the record, the Court concludes that Kellogg has produced sufficient evidence to show that it had a commercial interest in the "Cinnamon Toast" term.  Moreover and in addition to the above-referenced decision by the TTAB, the parties addressed the standing issue by entering into a stipulation in which they collectively agreed that Kellogg does have standing to pursue its claim in this litigation.

The standing issue having been resolved, we now consider the opposition on its merits.

We begin by noting that this intent-to-use application includes a partial claim of acquired distinctiveness, under Section 2(f) of the Trademark Act, as to the phrase CINNAMON TOAST.[2]  An amendment to allege use has not been filed.  The claim of acquired distinctiveness is based on applicant's ownership of two incontestable registrations for CINNAMON TOAST CRUNCH, one in standard character format and the other in a slightly stylized script, for "breakfast cereal"[3]; sixteen years use of the mark in commerce in connection with breakfast cereal; and advertising and revenue amounts pertaining to use of the mark in connection with breakfast

---

[2] Applicant withdrew its disclaimer of CINNAMON and TOAST with its Section 2(f) amendment and entitled the amendment a "Partial Claim of Acquired Distinctiveness," which implies that it pertains to only the term CINNAMON TOAST.  Thus, while the declaration itself refers to the mark as a whole, i.e., CINNAMON TOAST CRUNCH, as used with breakfast cereal, we construe applicant's Section 2(f) amendment consistently with applicant's other statements to be a partial claim under Section 2(f) for the term CINNAMON TOAST only.

[3] Each registration includes a disclaimer of CINNAMON TOAST apart from the mark as a whole.

cereal.  The Section 2(f) declaration of Gregory P. Kaihoi,

applicant's trademark counsel, includes the following

statements:

- Applicant is the owner of Registration Nos. 1681353 and
  1346597.  Registration No. 1681353, for the mark
  CINNAMON TOAST CRUNCH for "breakfast cereal," in
  International Class 30, issued March 31, 1992, and
  includes a disclaimer of CINNAMON TOAST apart from the
  mark as a whole.  [Sections 8 (6 yr. & 10 yr.) and 15
  affidavits accepted and acknowledged respectively;
  renewed.]  Registration No. 1346597, for the mark for
  "breakfast cereal," in International Class 30, issued
  July 2, 1985, and includes a disclaimer of CINNAMON
  TOAST apart from the mark as a whole.  [Sections 8 (6
  yr.) and 15 affidavits accepted and acknowledged,
  respectively.]

- Applicant's mark CINNAMON TOAST CRUNCH for breakfast
  cereal has been in use for 16 years.

- Applicant's sales of CINNAMON TOAST CRUNCH brand
  breakfast cereal total more than $650 million for the
  past five years; and its advertising expenditures
  related thereto for the same period are $46 million.

As grounds for opposition, opposer asserts that

applicant's mark is merely descriptive in connection with

the identified goods, under Section 2(e)(1) of the Trademark

Act.  In the notice of opposition, opposer made the

following statement asserting this claim (paragraph no. 4):

> Upon information and belief, notwithstanding
> Opposer's and the industry's long established
> prior practice of using the words "cinnamon,"
> "toast," "cinnamon toast," and "crunch" or
> "crunchy" descriptively in connection with the
> same or similar type of goods identified in
> Applicant's application, on February 25, 2000,
> Applicant filed an intent-to-use application for
> registration of the proposed CINNAMON TOAST
> CRUNCH trademark in which Applicant claims
> exclusive rights in the combination and also

4

asserts Section 2(f) rights as to the use of the phrase "cinnamon toast" in connection with "cereal-derived ready-to-eat food bar" … Whether the phrase "cinnamon toast" in the subject application has acquired distinctiveness is not apparent from the materials of record in the subject applica[tion] and therefore Opposer leaves the applicant to its proofs regarding the nature and sufficiency of whether these words acquired distinctiveness as of the filing date of the application or any time thereafter.

Applicant, in its answer, denied the salient allegations of the claim.

### *Opposer's Argument*

Opposer, in its brief, argues that applicant's claim under Section 2(f) of the Trademark Act is insufficient as a matter of law and that, therefore, applicant must disclaim the descriptive term CINNAMON TOAST or, alternatively, disclaim the descriptive term CINNAMON. Opposer recites its reasoning as follows (*emphasis in original*):

- Applicant did not present evidence establishing there is *a relationship* between the goods the mark will be used on (cereal derived ready-to-eat *food bars*) and the goods the same mark has been used on in the past (cereal); and

- Applicant's existing registrations for the mark CINNAMON TOAST CRUNCH *disclaim the terms* CINNAMON TOAST for use in connection with cereal, ergo these registrations do not provide the requisite evidence necessary to establish acquired distinctiveness in the terms CINNAMON TOAST in the subsequent intent to use application for CINNAMON TOAST CRUNCH for cereal derived ready-to-eat food bars.

Opposer further contends that "the grant of Applicant's Section 2(f) claim is contrary to public policy concerns

because it prevents others from using the descriptive terms CINNAMON TOAST to convey to consumers the content and/or flavor of goods" (brief, p. 6, 14-15); that applicant's declaration by its trademark counsel is of no probative value because he "is without first-hand knowledge of the public's perception and may be subject to bias (*id*, p. 8); that applicant's declaration is also defective because applicant failed to state that the use in commerce on which the claim is based was for at least the five years "immediately before the date of this statement" (*id*, p. 10); that applicant failed to submit actual evidence of acquired distinctiveness of the relevant portion of the mark; and that applicant has not established prima facie acquired distinctiveness with respect to the CINNAMON TOAST portion of its mark for the identified goods.

*Applicant's Argument*

Applicant contends that it has satisfied the statutory and procedural requirements and provided sufficient evidence establishing its Section 2(f) claim of acquired distinctiveness as to the CINNAMON TOAST portion of its mark for the identified goods; and that opposer has not met its burden of production because it has not filed any evidence controverting applicant's showing of acquired distinctiveness. Applicant contends that the relationship between the goods in its claimed registrations and the goods

6

in this application is self evident; that, although the registrations each disclaim CINNAMON TOAST, that disclaimer made more than ten years ago is no longer relevant; that, even without considering the two prior registrations, applicant's claim of use of the mark on breakfast cereal for more than five years constitutes prima facie evidence of acquired distinctiveness because CINNAMON TOAST is merely descriptive, not highly descriptive or generic; and that, further, the evidence of applicant's spending of $46 million on advertising and over $650 million in sales of its CINNAMON TOAST CRUNCH cereal for the five years immediately preceding the declaration is also sufficient, alone, to establish applicant's Section 2(f) claim.

Applicant asserts that its Section 2(f) declaration by its trademark counsel is completely acceptable; that the figures recited therein are not mere conjecture, but are based on applicant's business records; and that opposer provided no evidence that would call into question the validity of these statements. Applicant also asserts that, while its declaration did not use the exact language in the statute, "there is no logical interpretation of its language 'the past five years' other than the five years immediately leading up to the date of the declaration" (brief, p. 11).

Finally, applicant argues that there is no public policy issue involved herein, noting that the same issue

7

would apply to all marks registered under Section 2(f) of the Trademark Act, i.e., all marks registered under Section 2(f) prevent others from using terms that had originally been merely descriptive.

Regarding opposer's alternative request that the term CINNAMON be disclaimed, applicant states that CINNAMON TOAST is a unitary term with its own meaning, separate and apart from the meanings of the individual words; and that opposer itself treats the term as unitary. Applicant, for the first time in its brief, asks, in the alternative, that "should the Board decide that [applicant] cannot make a 2(f) claim as to the words CINNAMON TOAST alone (as requested by the Examiner), the Board should treat [applicant's] 2(f) claim as a claim to the entire CINNAMON TOAST CRUNCH mark" (brief, p. 13).

*Analysis*

In opposition proceedings involving a proposed trademark, the opposer bears the burden of establishing that the applicant does not have the right to register its mark. The Federal Circuit in *Yamaha International Corp. v. Hoshina Gakki Co. Ltd.*, 840 F.2d 1572, 6 USPQ2d 1001, 1005 (Fed. Cir. 1988), stated the following about the burden of proof in an opposition proceeding wherein the issue is whether applicant has proved acquired distinctiveness [*citations omitted; emphasis added*]:

8

> [O]ne opposing a Section 2(f) registration published for opposition on the basis of that section must have at least the initial burden of challenging or rebutting the applicant's evidence of distinctiveness made of record during prosecution which led to publication of the proposed mark.
>
> An opposer to an application submitted under Section 2(f) sufficiently meets its initial burden if it produces sufficient evidence **or argument** whereby, on the entire record then before the board, the board could conclude that the applicant has not met its ultimate burden of showing acquired distinctiveness. [This] simply requires Yamaha to present sufficient evidence **or argument** on which the board could reasonably conclude that Hoshino had not proven at least one of the elements necessary to obtain a trademark registration.
>
> . . .
>
> To prevent the immediate registration of the mark, the opposer has the initial burden to establish prima facie that the applicant did not satisfy the acquired distinctiveness requirement of Section 2(f). If opposer does not provide sufficient grounds to at least place the matter in issue, the situation is indistinguishable from one in which no opposition was filed.

Clearly, opposer has not met its initial burden via evidence. The question, then, is whether, through its argument, opposer has met this initial burden of establishing prima facie that applicant has not established acquired distinctiveness.

Before considering opposer's arguments, we review the elements necessary for applicant to establish that a mark in an intent-to-use application has acquired distinctiveness in connection with the identified goods. In *In re Dial-A-*

*Mattress Operating Corp.*, 240 F.3d 1341, 1347, 57 USPQ2d 1807, 1812 (Fed. Cir. 2001), the Court made the following statement:

> [A]n applicant can establish acquired distinctiveness in an intent-to-use application where it can show that [the] "same mark" acquired distinctiveness for related goods or services, and that this acquired distinctiveness will transfer to the goods or services specified in the application when the mark is used in connection with them. *See* TMEP § 1219.09(a) (1997) (listing cases).

The mark involved in the instant application is clearly identical to the mark in applicant's Registration No. 1681353 and, in view of the very slight degree of stylization of the letters, it is essentially the same as the mark in applicant's Registration No. 1346597. Opposer does not argue otherwise.

As to the second factor enunciated in *Dial-A-Mattress, supra*, opposer contends that applicant is required to, but did not, present evidence establishing a relationship between the respective goods. Applicant responds with the following statement (brief, p. 5):

> The incontestable federal registrations for the mark CINNAMON TOAST CRUNCH on which [applicant] relies are for use in connection with breakfast cereal. [Applicant] is seeking to register the mark for ready-to-eat food bars that are made from the CINNAMON TOAST CRUNCH breakfast cereal and are called "Milk n' Cereal Bars." The two products are both consumer food products and, as such, are inherently sold to the same prospective purchasers through the same typical consumer food outlets. The relationship between the goods is self-

10

evident. It is difficult to imagine two products that could be more closely related.

In *In re Rogers,* 53 USPQ2d 1741, 1744 (TTAB 1999), the Board stated that a relationship between the goods or services involved should be established by "relevant evidence rather than mere conjecture." However, this statement does not require submission of extrinsic evidence in cases where the identifications of goods alone reveal sufficient facts about the respective goods from which a conclusion, not based on mere conjecture, as to the relationship between the goods may be made. An example of such a case is *In re Dial-A-Mattress, supra,* where, without reference to any evidence, the Court found a "close relationship" between "retail outlet services and retail store services featuring mattresses" and "telephone shop-at-home retail services in the field of mattresses," noting that "the latter can be considered a subset of the former." *See also*, *In re Best Products Co., Inc.*, 231 USPQ 988, 989 n.6 (TTAB 1986), wherein the Board stated "[W]e infer in the instant case that the differences between the marks BEST & Des. and BEST JEWELRY & Des., and between the identifications of services in their respective registrations ['mail order and catalog showroom services' and 'retail jewelry store services'], were deemed to be immaterial differences." *Cf. Hewlett-Packard Co. v. Packard Press Inc.*, 281 F.3d 1261, 62 USPQ2d 1001 (Fed. Cir. 2002)

11

(although addressing the issue of likelihood of confusion, the court held that the respective identifications of goods were, themselves, evidence as to the relatedness of the parties' goods and extrinsic evidence of relatedness was not *per se* required).

Thus, there is no absolute rule that applicant must submit extrinsic evidence to support its contention that the goods are related. The showing necessary to establish relatedness will vary from case to case and depend on the nature of the goods or services involved and the language used to identify them.

Applicant's goods are identified in the instant application as food bars derived from cereal and, as such, are simply a different and convenient way for purchasers to consume cereal, i.e., other than as loose cereal in a bowl or directly from the original box. We find that the close relationship between the goods is self evident from the respective identifications of goods and there is no requirement for the submission of extrinsic evidence to establish that the goods are related in this case.

Therefore, because it is not well taken, opposer's argument that extrinsic evidence is required to establish that the goods are related does not meet opposer's initial burden of challenging or rebutting the applicant's evidence

12

of acquired distinctiveness made of record during prosecution and accepted by the examining attorney.

Opposer contends that because applicant's existing registrations for the mark CINNAMON TOAST CRUNCH contain disclaimers of the term CINNAMON TOAST, these registrations cannot provide the requisite evidence necessary to establish the acquired distinctiveness of this term in the subsequent intent-to-use application.

We find no error in the examining attorney's consideration of the two prior registrations for CINNAMON TOAST CRUNCH, which contain disclaimers of CINNAMON TOAST, solely as evidence of the length of time the mark as a whole has been registered.[4]  Applicant also submitted an affidavit attesting to sales, advertising and use for more than 16 years of its CINNAMON TOAST CRUNCH mark for breakfast cereal.  Presumably, the examining attorney considered the registrations and this affidavit together in determining that the mark as a whole had acquired distinctiveness for breakfast cereal.  Clearly, because the examining attorney accepted the partial claim of acquired distinctiveness as to CINNAMON TOAST for the goods herein, the examining attorney

---

[4] In a proceeding before the Board, we do not generally consider whether the examining attorney made an error.  However, in this case, we are considering whether the examining attorney erred to determine whether we will consider the case on its merits.

found the evidence in its entirety supported such a conclusion, and we agree.[5]

Both of the registrations upon which applicant relies include disclaimers of the phrase CINNAMON TOAST. We find that the substantial length of use and registration of the marks for breakfast cereal, and the substantial sales and advertising over the past five years alone, as attested to by applicant's trademark counsel, are sufficient, in the absence of any countervailing evidence, to establish that applicant's mark as a whole, including the disclaimed phrase CINNAMON TOAST, has acquired distinctiveness in connection with breakfast cereal.

Considering connotation and commercial impression, the CINNAMON TOAST portion of the CINNAMON TOAST CRUNCH mark is a unitary term describing a specific type of toast and a cereal flavor. The CRUNCH portion of the mark appears separable from that connotation and connotes a characteristic or texture of cereal. While applicant's claim of acquired distinctiveness in the instant application pertains only to the CINNAMON TOAST portion of the mark, we find this portion of the mark to be unitary and sufficiently

---

[5] Certainly, applicant could not rely only on the two registrations for CINNAMON TOAST CRUNCH for breakfast cereal with disclaimers of the term CINNAMON TOAST. As is the case herein, a further showing was necessary to establish that the term CINNAMON TOAST has acquired distinctiveness in the context of the mark as a whole for breakfast cereal. Depending on the degree of descriptiveness of the terms involved, this could be established by an affidavit of more than five years substantially exclusive use of the mark in connection with breakfast cereal.

14

separable from the mark as a whole to conclude that the showing of acquired distinctiveness as to the mark as a whole is sufficient to support applicant's partial claim of acquired distinctiveness as to the phrase CINNAMON TOAST for breakfast cereal. In view of the identity of the marks and the close relationship between the goods involved, we find that transference of the established acquired distinctiveness of the CINNAMON TOAST portion of applicant's mark for breakfast cereal is likely to occur when the mark is used in connection with the goods identified herein.

Thus, because it is not well taken, opposer's arguments discussed above do not meet opposer's initial burden of challenging or rebutting applicant's evidence of acquired distinctiveness made of record during prosecution and accepted by the examining attorney.

Opposer has made several additional arguments that are not well taken and do not meet opposer's burden of going forward. In particular, opposer's argument that applicant's Section 2(f) claim is contrary to public policy because it permits a business to obtain exclusive rights to a descriptive term is without merit. This argument completely disregards the language of Section 2(f), which, as a matter of public policy, permits a trademark owner to establish trademark rights in a merely descriptive, as opposed to

generic, term upon a showing that the matter has acquired distinctiveness as a mark for particular goods and/or services to the relevant consumers.

Opposer's argument that applicant's declaration submitted in support of its Section 2(f) claim is unpersuasive because applicant's trademark counsel is without first-hand knowledge of the public's perception and is biased is, likewise, without merit. The relevant portions of the declaration pertain to facts regarding length of use and sales and advertising figures and it is these facts that properly form the basis for trademark counsel's opinion that the mark has acquired distinctiveness. Opposer has provided no evidence or argument indicating that these facts are not based on applicant's records kept in the ordinary course of business or that applicant's trademark counsel is not entitled to rely on those records. Nor has opposer demonstrated how any bias by trademark counsel is manifest in the declaration or may have affected the examining attorney's decision.

Similarly, we find no merit in opposer's contention that "applicant's Section 2(f) claim is further defective because its 'partial 2(f) declaration' fails to indicate that the use referred to occurred immediately before the date of the declaration" (brief, p. 10). Section 2(f) of the Act follows:

16

> (f) … nothing herein shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce.  The Director may accept as prima facie evidence that the mark has become distinctive, as used on or in connection with the applicant's goods in commerce, proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for the five years before the date on which the claim of distinctiveness is made.  …

Applicant's affidavit includes the following statement:

> In view of applicant's extensive sales and advertising of this mark, its long ownership of incontestable registrations, and its continuous and substantially exclusive use over a long period of time, including the past five years, General Mills believes that this mark has acquired secondary meaning.

On its face, applicant's statement complies with the requirements of the statute and pertains to the period of time before the date of the declaration; and opposer has provided no probative evidence or argument to the contrary. Applicant is not required to slavishly adhere to the exact wording of the statute.

In conclusion, based on the entire record, opposer has not met its initial burden of challenging or rebutting the applicant's evidence of acquired distinctiveness made of record during prosecution and accepted by the examining attorney.  In other words, based on its argument alone, opposer has not rebutted applicant's *prima facie* showing of acquired distinctiveness of the mark CINNAMON TOAST CRUNCH for breakfast cereal and, concomitantly, the acquired

17

distinctiveness of the unitary portion thereof, CINNAMON TOAST, and that this acquired distinctiveness will transfer to the use of that same mark and same portion thereof in connection with cereal derived ready-to-eat food bars.

We add that it will be the rare case, indeed, where a plaintiff can satisfy its initial burden in this type of proceeding based on argument alone.

*Decision:*  The opposition is dismissed.